**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **JOHN KENNETH JENSEN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MICHAEL J. ASTRUE,**<br>**Commissioner of Social Security,**<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:07-cv-357-PMW**<br><br>**Magistrate Judge Paul M. Warner** |

Before the court is John Kenneth Jensen's ("Plaintiff") appeal of Michael J. Astrue's (the "Commissioner") final decision denying Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 1381–1383f. After careful consideration of the written briefs and the complete record, the court has determined that oral argument would not be helpful or necessary in this case.

**RELEVANT BACKGROUND**

On April 30, 2002, Plaintiff filed an application for SSI, alleging disability beginning April 1, 2002, due to heart attack, heart failure, blocked arteries, history of seizures, low energy, depression, and anxiety.[1] After his application was denied initially[2] and upon reconsideration,[3]

---

[1] *See* docket no. 6, Administrative Record ("Tr. ____"), 68–70, 94.

[2] *See* Tr. 58–60.

[3] *See* Tr. 53–55.

Plaintiff requested a hearing before an Administrative Law Judge (the "ALJ"),[4] and that hearing was held on November 13, 2003.[5] The ALJ issued a written decision on February 24, 2004, determining that Plaintiff was not entitled to SSI.[6] On March 18, 2004, Plaintiff filed a request for review of the ALJ's decision.[7] On March 11, 2005, the Appeals Council granted that request for review, vacated the ALJ's decision, and remanded the case for further proceedings.[8]

A hearing was held after the Appeals Council's remand on October 12, 2005.[9] The ALJ issued a written decision on January 25, 2006, again determining that Plaintiff was not entitled to SSI.[10] On March 1, 2006, Plaintiff filed a request for review of the ALJ's decision.[11] On March 26, 2007, the Appeals Council rendered an unfavorable decision,[12] which is the Commissioner's final decision in this case for purposes of judicial review. *See* 20 C.F.R. § 416.1481.

---

[4] *See* Tr. 51–52.

[5] *See* Tr. 414–69.

[6] *See* Tr. 187–97.

[7] *See* Tr. 200–201.

[8] *See* Tr. 202–204.

[9] *See* Tr. 470–505.

[10] *See* Tr. 21–36.

[11] *See* Tr. 17–18.

[12] *See* Tr. 7–12.

On May 31, 2007, Plaintiff filed his complaint in this case, which was assigned to District Judge Dale A. Kimball.[13] On June 12, 2007, Judge Kimball referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[14] Thereafter, in response to a court order,[15] both parties consented to having a United States Magistrate Judge conduct all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[16] Consequently, the case was reassigned to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure.[17]

The Commissioner filed his answer to Plaintiff's complaint on August 16, 2007,[18] and the court received the Administrative Record the following day.[19] Plaintiff filed his opening brief on

---

[13] *See* docket no. 3.

[14] *See* docket no. 4.

[15] *See* docket no. 7.

[16] *See* docket nos. 8, 9.

[17] *See* docket no. 9.

[18] *See* docket no. 5.

[19] *See* docket no. 6.

December 19, 2007.[20] The Commissioner filed his responsive brief on January 17, 2008.[21] Plaintiff filed his reply brief on February 4, 2008.[22]

**STANDARD OF REVIEW**

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see id*. § 1383(c)(3). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted). "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

---

[20] *See* docket no. 10.

[21] *See* docket no. 11.

[22] *See* docket no. 12.

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. § 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750–51 (quotations and citations omitted); *see* 20 C.F.R. § 416.920(a)(4)(i)–(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ." *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. § 416.920(a)(4)(iii). At the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv). "If the claimant is able to perform his previous work, he is not

disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability." *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id*. At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the residual functional capacity [("RFC")] to perform other work in the national economy in view of his age, education, and work experience." *Id*. (quotations and citation omitted); *see* 20 C.F.R. § 416.920(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. § 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," *id*., he is disabled and entitled to benefits.

## ANALYSIS

Plaintiff makes a total of five arguments in his opening brief. In support of his claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred in her (1) analysis under step three of the evaluation process, (2) evaluation of the opinions of Plaintiff's treating physician, (3) evaluation of Plaintiff's credibility, and (4) assessment of Plaintiff's RFC. Based on the success of those arguments, Plaintiff also argues that (5) the court should simply award Plaintiff benefits, rather than remanding this case for a new hearing. The court will address each of those argument in turn.

### I. Step Three

Plaintiff argues that the ALJ erred by failing to conduct a proper analysis under step three. Plaintiff contends that the ALJ's review of the medical evidence was inadequate, as was her

reasoning in support of her step-three conclusion. Plaintiff also claims that the ALJ and the Appeals Council both erred by failing to call on a medical expert to address the question of medical equivalence.

**A. Analysis Under Step Three**

As noted by the Commissioner, it was Plaintiff's burden to establish disability under the listings. *See Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988); *Hendrix v. Barnhart*, 313 F. Supp. 2d 1222, 1230 (D. Utah 2004).

> For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . . For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.

*Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990) (citations omitted).

In her analysis under step three, the ALJ specifically considered section 4.02 ("listing 4.02") of Appendix 1 of the relevant regulations (individually, a "listing" and collectively, the "listings").[23] *See* 20 C.F.R. § 404, Subpart P, Appendix 1, listing 4.02 (chronic heart failure); *see also* 20 C.F.R. § 416.925. After summarizing the relevant medical evidence, the ALJ concluded that there was insufficient medical evidence in the record to satisfy the requirements of listing

---

[23] *See* Tr. 28–29.

4.02.[24] The ALJ also concluded that Plaintiff did not meet or equal the requirements of any of the listings, including listing 4.02.[25]

Contrary to Plaintiff's assertion, the court is not presented with the type of bare conclusion under step three faced by the court in *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ adequately reviewed the evidence (or lack thereof) in this case, specifically considered the requirements of listing 4.02, and provided sound reasoning for her conclusion that Plaintiff failed to demonstrate that all of those requirements had been satisfied. Specifically, the ALJ concluded that while Plaintiff had satisfied the requirements of subsection A of listing 4.02, he failed to demonstrate that the requirements of subsection B had been satisfied. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, listing 4.02 ("The required level of severity for this impairment is met when the requirements in both A and B are satisfied."). Notably, Plaintiff neither challenges that conclusion nor points to any evidence in the record that would alter that conclusion. Instead, he recites some of the medical evidence in the record, most of which was specifically considered by the ALJ in her decision, and then asserts that "[i]f [Plaintiff] doesn't meet [the requirements of listing 4.02], he is close to doing so."[26] That argument fails. The court concludes that Plaintiff failed to carry his burden to demonstrate that his impairments met or equaled listing 4.02.

---

[24] *See id.*

[25] *See id.*

[26] Docket no. 10 at 15.

Plaintiff also appears to argue that the ALJ should have considered listing 4.05 (recurrent arrhythmias) and listing 12.04 (affective disorders). As to listing 4.05, Plaintiff fails to either point to any specific evidence to support his claims that the ALJ should have considered that listing or demonstrate that Plaintiff's impairments satisfy the requirements of that listing. Instead, Plaintiff cites to the same medical evidence in the record he cited in discussing listing 4.02 and makes the same conclusory claim he made in reference to listing 4.02, namely, that "[i]f [Plaintiff] doesn't meet [the requirements of listing 4.05], he is close to doing so."[27] As stated above, that argument fails. Moreover, the Commissioner correctly argues that Plaintiff failed to carry his burden of demonstrating that his impairments met or equaled listing 4.05. Specifically, the Commissioner asserts that Plaintiff failed to demonstrate that he suffered from "episodes of cardiac syncope or near syncope" that were "documented by resting or ambulatory . . . electrocardiography, or by other appropriate medically acceptable testing." 20 C.F.R. § 404, Subpart P, Appendix 1, listing 4.05. Plaintiff provides no meaningful response to that argument. Accordingly, the court has determined that Plaintiff failed to carry his burden to demonstrate that his impairments met or equaled listing 4.05.

In support of his claim that the ALJ should have considered listing 12.04, Plaintiff relies almost exclusively on the neuropsychological evaluation of Plaintiff by Dr. Linda J. Gummow.[28] Plaintiff, however, fails to challenge the ALJ's conclusion that she would accord "Dr.

---

[27] *Id.*

[28] *See* Tr. 391–413.

Gummow's opinion little, if any, weight."[29] In addition, the ALJ's RFC determination incorporates some mental limitations, which demonstrates that the ALJ did in fact consider Plaintiff's mental impairments. Further, as he has done with the listings discussed previously, Plaintiff fails to point to the specific evidence that he claims the ALJ failed to consider and demonstrate how that medical evidence supports a finding that Plaintiff's impairments meet or equal the specific requirements of listing 12.04. In fact, Plaintiff's briefs contain no discussion of the requirements of listing 12.04.

While it is true the ALJ's determinations about Plaintiff's mental impairments are not contained within the ALJ's discussion under step three, that does not mean that the ALJ's determination under step three is necessarily deficient pursuant to *Clifton*. *See* 79 F.3d at 1009. Indeed, the Tenth Circuit has stated that "[n]either *Clifton*'s letter nor spirit require a remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005). In this case, the court concludes that the ALJ's RFC determination, which includes her rejection of Dr. Gummow's opinion, demonstrates that she considered Plaintiff's mental impairments but did not consider them to be severe enough to merit discussion in reference to listing 12.04. Therefore, the court concludes that any deficiency in the ALJ's analysis under step three with respect to listing 12.04 is harmless. *See id.* at 734–35 (concluding that the ALJ's findings at steps four and five rendered harmless any

[29] Tr. 33.

deficiency in the ALJ's step three determination). Moreover, the court concludes that Plaintiff failed to carry his burden to demonstrate that his impairments met or equaled listing 12.04.

**B. Medical Expert**

Plaintiff also argues that the ALJ and the Appeals Council both erred under step three by failing to call on a medical expert to address the question of medical equivalence. Plaintiff bases this argument on Social Security Ruling ("SSR") 96-6p. Plaintiff contends that SSR 96-6p requires the ALJ and the Appeals Council to obtain an updated opinion from a medical expert on medical equivalence when additional evidence may change the State agency consultant's finding that the impairments are not equivalent in severity to an impairment in the listings. That argument fails.

In relevant part, SSR 96-6p provides that the ALJ and the Appeals Council must obtain an updated opinion from a medical expert "[w]hen additional medical evidence *is received* that *in the opinion of the [ALJ] or the Appeals Council* may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the [l]isting[s]." SSR 96-6p (emphasis added). Plaintiff has failed to address, or even acknowledge, the language emphasized above. Plaintiff has failed to indicate if the additional evidence he references was actually received and before either the ALJ or the Appeals Council. In addition, Plaintiff has failed to identify the substance of that additional evidence or demonstrate how it should have changed the ALJ's or the Appeals Council's views of the State agency medical consultants' findings concerning medical equivalence. Finally, given that neither the ALJ nor the Appeals Council chose to obtain an updated medical opinion, it is reasonable to

assume that neither was of the opinion that it was necessary. *See id*. For these reasons, the court concludes that the ALJ and the Appeals Council satisfied the requirements of SSR 96-6p.

In sum, the court concludes that the ALJ did not err with respect to step three of the evaluation process. Accordingly, Plaintiff's arguments concerning step three fail.

**II. Treating Physician**

Plaintiff argues that the ALJ improperly rejected the opinion of one of his treating physicians, Dr. Brian G. Crandall. Because Dr. Crandall is one of Plaintiff's treating physicians, his opinions are entitled to controlling weight if they are well supported and are not inconsistent with other substantial evidence in the record. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *see also* 20 C.F.R. § 416.927(d)(2). At the same time, however, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g.*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). In addition, "[a] treating physician's opinion may be rejected if his conclusions are not supported by specific findings." *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see also Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (stating that "a treating physician's opinion might be rejected if it is brief, conclusory, and unsupported by medical evidence").

In her decision, the ALJ provided a summary of a September 1, 2004 Physical Residual Functional Capacity Assessment of Plaintiff completed by Dr. Crandall.[30] In that assessment, Dr.

---

[30] *See* Tr. 31.

Crandall diagnosed Plaintiff with coronary artery disease, depression, and anxiety.[31] Dr. Crandall indicated that Plaintiff had severe heart damage with an ejection fraction of 20% and congestive heart failure.[32] Dr. Crandall also provided specific limitations on Plaintiff's ability to work.[33]

After concluding her summary of Dr. Crandall's assessment, the ALJ concluded that she would give "little, if any, weight" to Dr. Crandall's opinion.[34] The ALJ went on to provide the following reasons to support that conclusion. The ALJ noted that while Dr. Crandall performed surgery on Plaintiff in January 2002, Plaintiff saw Dr. Crandall only twice for follow-up visits (in February 2002 and May 2004) in the four years following that surgery and hospitalization.[35] The ALJ also stated that Dr. Crandall's progress notes from those two follow-up visits failed to provide a detailed assessment of Plaintiff's limitations.[36] The ALJ further noted that even if Dr. Crandall had accessed the other medical records and progress notes at the Utah Heart Clinic in making his assessments of Plaintiff, those medical records and progress notes also failed to provide a detailed account of Plaintiff's limitations.[37] The ALJ also noted that the record before her indicated that Plaintiff underwent only one echocardiogram during the period under

[31] *See id.*

[32] *See id.*

[33] *See id.*

[34] *Id.*

[35] *See* Tr. 31–32.

[36] *See* Tr. 32.

[37] *See id.*

consideration and that there was no indication that Plaintiff ever underwent a second echocardiogram that was scheduled to take place in December 2004.[38]

In reaching her conclusion, the ALJ properly relied upon the low number of examinations that Dr. Crandall had performed on Plaintiff. *See* 20 C.F.R. § 416.927(d)(2)(i) (providing that a treating source's medical opinions will be given more weight the longer and more frequently that medical source has treated the claimant). The ALJ also properly relied upon the low number of tests that Dr. Crandall performed on Plaintiff. *See id*. § 416.927(d)(2)(ii) (providing that the weight of a treating source's opinion will depend on the types and extent of examinations and testing performed). Finally, the ALJ properly relied upon the lack of medical evidence, such as detailed examination notes, in support of the stated restrictions. *See id*. § 416.927(d)(3) (providing that opinions will be given more weight when supported by more relevant evidence and more explanation). In doing so, the ALJ complied with her obligation to provide "specific, legitimate reasons" for rejecting the opinion of Dr. Crandall. *Frey*, 816 F.2d at 513 (quotations and citation omitted). Accordingly, the court concludes that the ALJ did not err with respect to the treatment of Dr. Crandall's opinion.

**III. Credibility**

Plaintiff claims that the ALJ improperly evaluated his credibility. In general, "[c]redibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68

---

[38] *See id*.

F.3d 387, 391 (10th Cir. 1995) (quotations and citation omitted). Although credibility determinations "should be closely and affirmatively linked to substantial evidence," *id.* (quotations and citation omitted), they "do[] not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

A more specific framework of analysis applies to determining whether Plaintiff's subjective allegations of pain are credible. *See Luna v. Bowen*, 834 F.2d 161, 162–66 (10th Cir. 1987). Under that framework, the court must consider "(1) whether [Plaintiff] established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and [Plaintiff's] subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [Plaintiff's] pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (quoting and citing *Luna*, 834 F.2d at 163–64).

Even assuming, for the sake of argument, that Plaintiff has established the first two elements of that analytical framework, the court must still consider the third element. *See id.* Under the third element, consideration of the subjective evidence includes Plaintiff's own testimony and is "evaluated only on the basis of credibility." *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

> When determining the credibility of pain testimony, the ALJ should consider such factors as the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the

> consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id*. (quotations and citations omitted); *see also* SSR 96-7p.

Plaintiff argues that the ALJ's entire analysis of Plaintiff's credibility is conclusory and contained in one paragraph of the ALJ's decision. That argument is both misleading and without merit. While the ALJ did insert her conclusion about Plaintiff's credibility at the beginning of the section of her decision devoted to discussing credibility, she followed that conclusion with over a page of supporting discussion and reasoning.[39]

In that discussion, the ALJ properly considered several of the above-referenced factors to support her conclusion that Plaintiff's "statements concerning the intensity, duration[,] and limiting effects of [his] symptoms are not entirely credible."[40] For example, the ALJ noted that (1) Plaintiff told one doctor in October 2004 that he had stopped working in 2001 due to his heart attack, while he told another doctor in July 2002 that he had worked construction for twenty years but stopped because of the erratic nature of the business;[41] (2) Plaintiff's testimony concerning the functioning of his pacemaker was demonstrated to be an exaggeration when compared to the actual data concerning the functioning of the pacemaker;[42] (3) Plaintiff almost completely failed to comply with prescribed treatment for his alleged mental impairments and, in

---

[39] *See* Tr. 29–31.

[40] Tr. 29.

[41] *See id*.

[42] *See* Tr. 30.

doing so, effectively precluded any mental health treatment other than medication, despite his increasing complaints of anxiety and panic attacks;[43] (4) Plaintiff failed to comply with treatment prescribed by physicians for many other physical problems;[44] and (5) Plaintiff failed to comply consistently in taking his prescribed medications.[45] In considering those factors, the ALJ cited to the specific portions of the record evidence she relied upon.[46]

The court has determined that the ALJ relied upon proper factors in making her specific findings about Plaintiff's credibility. *See Thompson*, 987 F.2d at 1489; SSR 96-7p. In addition, the court has reviewed the relevant portions of the record cited by the ALJ in support of her credibility findings.[47] After that review, the court has determined that the cited portions constitute substantial evidence in support of those findings and that those findings are closely and affirmatively linked to that substantial record evidence. *See Kepler*, 68 F.3d at 391. Accordingly, the court will not disturb the ALJ's conclusion about Plaintiff's credibility.

**IV. RFC**

Plaintiff argues that the ALJ failed to properly determine Plaintiff's RFC. More specifically, Plaintiff asserts that the ALJ's RFC determination fails to comply with the narrative discussion requirement of SSR 96-8p. *See* SSR 96-8p (providing that "[t]he RFC assessment

---

43 *See id.*

44 *See id.*

45 *See* Tr. 30–31.

46 *See* Tr. 29–31.

47 *See id.*

must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" and that "[t]he adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").

Plaintiff contends that the ALJ's RFC determination failed to comply with SSR 96-8p because it "appears as a conclusion . . . , with no reasoning and no citation of specific facts."[48] Similar to Plaintiff's argument concerning the ALJ's credibility determination, this argument is both misleading and without merit. As she did in the section of her decision dealing with Plaintiff's credibility, the ALJ inserted her conclusion about Plaintiff's RFC at the beginning of the section devoted to discussing Plaintiff's RFC.[49] She followed that conclusion, however, with over four pages of supporting discussion and reasoning.[50]

In essence, Plaintiff is asking the court to view the ALJ's supporting discussion as merely a "summar[y of] the medical evidence."[51] The court's reading of that discussion, however, demonstrates that the ALJ not only summarized the medical evidence but also discussed the "nonmedical evidence (e.g., daily activities, observations)" and "explain[ed] how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."

---

[48] Docket no. 10 at 22.

[49] *See* Tr. 29.

[50] *See* Tr. 29–33.

[51] Docket no. 12 at 6.

*Id*. For example, the ALJ incorporated her credibility determination into her RFC assessment.[52] As previously noted, that determination included a discussion about the nonmedical evidence that the ALJ considered in concluding that Plaintiff's testimony was not credible. The ALJ also noted in numerous places how she resolved inconsistencies and ambiguities in the record evidence.[53] Finally, the ALJ specifically considered the medical opinion evidence in her findings in support of Plaintiff's RFC.[54] *See id*. ("The RFC assessment must always consider and address medical source opinions."). The ALJ accepted that opinion evidence to the extent it was supported by the record and provided an adequate explanation for the portions of that evidence that she rejected.[55] *See id*. ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). For these reasons, the court concludes that the ALJ complied with SSR 96-8p in determining Plaintiff's RFC.

Plaintiff also argues that the ALJ's RFC assessment is not supported by substantial evidence. Notably, however, Plaintiff has not attempted to demonstrate how the record evidence fails to support the ALJ's RFC assessment. Instead, Plaintiff fails to acknowledge or address the ALJ's discussion immediately following her RFC assessment and then makes the conclusory assertion that the ALJ's RFC findings "are not supported by substantial evidence."[56] As the court

---

[52] *See* Tr. 29–31.

[53] *See* Tr. 31–33.

[54] *See id*.

[55] *See id*.

[56] Docket no. 10 at 22.

has previously established, Plaintiff's attempts to minimize the ALJ's discussion and reasoning in support of her RFC assessment are not persuasive. Further, after reviewing that discussion and the record evidence, the court concludes that the ALJ's RFC determination is supported by substantial evidence. *See Lax*, 489 F.3d at 1084.

Based on the foregoing, the court concludes that the ALJ did not err with respect to her assessment of Plaintiff's RFC.

### V. Request for Award of Benefits

Based on the success of his arguments supporting reversal of the Commissioner's decision, Plaintiff argues that the court should simply award Plaintiff benefits rather than remand this case for a new hearing. Given that the court has rejected all of Plaintiff's arguments in support of reversal of the Commissioner's decision, it logically follows that the court will neither award benefits to Plaintiff nor remand this case for a new hearing.

## CONCLUSION AND ORDER

The court concludes that all of Plaintiff's arguments fail. Accordingly, **IT IS HEREBY ORDERED** that the Commissioner's decision in this case is **AFFIRMED** in all respects.

**IT IS SO ORDERED**.

DATED this 26th day of September, 2008.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge